UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
ERIK WHITE,                          :      16 Civ. 6769 (PAE) (JCF)

              Plaintiff,             :

                                     :         REPORT AND
                                             RECOMMENDATION
                                     :

                                     :

       - against -                   :

                                     :

DORA B. SCHRIRO -- Former            :
Commissioner (Dept. of Corr.),       :
JOSEPH PONTE --Commissioner (Dept.   :
of Correction), K.STAUES -- Warden   :
(O.B.C.C. -- Rikers Island),         :
CORRECTION OFFICER TAYLOR            :
(Security OBCC), CORRECTION          :
OFFICER WILSON (Security OBCC),      :
SECURITY CAPTAIN MITCHELL (OBCC),    :
AREA CAPTAIN SPENCER (OBCC),         :
CLEMENT GLENN -- Former Warden       :
(RNDC -- Rikers Island), ADA         :
PRESLEY -- Warden (RNDC), SECURITY   :
CAPT. PINES (RNDC), SECURITY         :
CAPTAIN JEAN (RNDC), CORRECTION      :
OFFICE GORDON (RNDC), SECURITY       :
OFFICER CHAMBERS (RNDC),             :
D. FRAZIER -- Former Acting Warden   :
Brooklyn Detention Complex (BKDC),   :
WARDEN BEAULIEU (BKDC), SECURITY     :
CAPT. THOMAS (BKDC), CAPT.           :
RICHARDSON (BKDC), CORRECTION        :
OFFICER TIMBERLAKE (Security BKDC),  :
CORIZON HEALTH SERVICES MANAGER      :
JOHN/JANE DOE, BOB BARKER COMPANY    :
INC., CITY OF NEW YORK, DEPT. OF     :
CORRECTIONS,                         :

                                     :

              Defendants.            :
- - - - - - - - - - - - - - - - - -:
TO THE HONORABLE PAUL A. ENGELMAYER, U.S.D.J.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/31/17

Erik White brings this suit pro se pursuant to 42 U.S.C. §
1983 against the City of New York ("the City"); former New York
City Department of Correction ("DOC") Commissioner Dora Schiro;
current DOC Commissioner Joseph Ponte; Corizon Health Services
Manager John/Jane Doe; Warden K. Staues; Warden Frazier; Warden
Beaulieu; Warden Clement Glenn; Warden Ada Presely; Correction
Officers Taylor and Timberlake; Security Officer Chambers; and
Captains Spencer, Mitchell, Thomas, Jean, and Richardson
(collectively, the "City Defendants"); and the Bob Barker Company
Inc.[1] The plaintiff, who was held in the custody of the DOC at the
Otis Bantum Correctional Center ("OBCC"), the Robert N. Davoren
Center ("RNDC"), and the Brooklyn Detention Complex ("BKDC"),
alleges that the conditions of his confinement violated his
Fourteenth Amendment[2] rights.  He seeks compensatory damages in the
amount of $15,000,000 and injunctive relief.  The City Defendants

---

[1]  The plaintiff also named the DOC and Brooklyn Detention
Complex as defendants in his Complaint, but the Court dismissed all
claims against those defendants sua sponte.  (Order dated March 1,
2017, at 2-3).

[2]  In the Amended Complaint, Mr. White alleges violations of
his Fifth and Eighth Amendment rights.  However, it appears he was
a pre-trial detainee. (See Order dated October 4, 2016, at 3 n.2;
Memorandum of Law in Support of Defendants' Motion to Dismiss the
Amended Complaint at 7 & n.3).  These claims would therefore be
properly brought under the Fourteenth Amendment.  Patterson v.
Ponte, No. 16 Civ. 3156, 2017 WL 1194489, at *5 (S.D.N.Y. March 30,
2017) ("A pre-trial detainee's conditions of confinement claims are
governed by the Due Process Clause of the Fourteenth Amendment
rather than the Eighth Amendment . . . .").

and Bob Barker Company have each moved to dismiss the claims against them.  For the reasons set forth below, I recommend that the motions be granted.

Background

Mr. White was detained at several New York City jails from June 18, 2014, through October 31, 2016.  (Amended Complaint ("Am. Compl.") at 4).[3]  He began experiencing back pain in April 2015 while detained at BKDC.  (Am. Compl. at 11).  He was later transferred to OBCC on Rikers Island, where he continued to "experience pain and soreness in [his] lower back, neck and shoulder."  (Am. Compl. at 5).  The plaintiff alleges that this pain was caused by the thin, uncomfortable Bob Barker mattresses that were issued to him at each institution.  (Am. Compl. at 4). Mr. White complained of these back problems and eventually received medical treatment from Dr. Harjinder Bhatti.  (Am. Compl. at 5-6, 25).  The plaintiff states that Dr. Bhatti "confirmed" his condition, prescribed medication, and wrote a referral form requesting that Mr. White be given a firm mattress.  (Am. Compl. at 5).

Mr. White presented this form to officers in his housing unit

_____

[3]  Because the Amended Complaint includes unnumbered pages, I use the page numbers assigned by the Court's Electronic Case Filing System.

who were unable to help him procure such a mattress. (Am. Compl. at
6). He then discussed the issue with Warden Staues, who told him
that the DOC does not provide such mattresses and that he would not
be allowed to have two mattresses as an alternative. (Am. Compl.
at 6). Nevertheless, the plaintiff found and started using an
additional mattress, which was repeatedly confiscated by several
correction officers, including Correction Officers Foster, Taylor,
and Wilson and Captain Mitchell. (Am. Compl. at 6-7). Mr. White
showed each of the officers "proof" of his need for a firm mattress
–- presumably Dr. Bhatti's referral form –- when they confiscated
the additional mattress. (Am. Compl. at 7).

Mr. White complains that the lack of a proper mattress and the
resulting lack of sleep and back pain caused his mental health to
deteriorate. (Am. Compl. at 7-8). He was ultimately referred to
the mental health department, where he was prescribed medication to
treat depression, anxiety, and insomnia. (Am. Compl. at 7-8). The
plaintiff eventually stopped taking this medication, feeling that
he was growing too dependent on it. (Am. Compl. at 8).

Mr. White was transferred from OBCC to RNDC in September 2015.
(Am. Compl. at 8, 11). At RNDC, he was told that since his
doctor's note was from another institution, he would need to get
another one; however, he was cautioned that the doctors at RNDC
would not write prescriptions for special mattresses. (Am. Compl.

at 8).  In response, and without authorization, Mr. White obtained a second mattress.  (Am. Compl. at 8).  Again, the second mattress was repeatedly confiscated by correction officers.  (Am. Compl. at 8-9).  The plaintiff also presented the referral form to these officers.  (Am. Compl. at 9).  When Mr. White was transferred to back to BKDC in August 2016, this same sequence of events occurred again.  (Am. Compl. at 9, 12).  He was taken to see a doctor at BKDC who diagnosed him with sciatica and prescribed medication.  (Am. Compl. at 10).  Mr. White refused to take this prescription, as he had concerns about the potential negative side effects.  (Am. Compl. at 10).  He was also scheduled for physical therapy to treat his sciatica, but he was transferred to New York State Department of Corrections and Community Supervision before receiving any further treatment.  (Am. Compl. at 10).

Discussion

    A.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The court's charge in ruling on a 12(b)(6) motion "is merely to assess the legal feasibility of the complaint, not to

assay the weight of the evidence which might be offered in support thereof." GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)). The court must construe the complaint in the light most favorable to the plaintiff, "taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

This standard applies equally to pro se plaintiffs, but their pleadings are read more liberally and are construed as raising the strongest claims implied. See Teichmann v. New York, 769 F.3d 821, 825 (2d Cir. 2014). The court may also consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." Martinez v. Aycock-West, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016) (quoting Alsaifullah v. Furco, No. 12 Civ. 2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013)).

B.    City Defendants

The City defendants have moved to dismiss the plaintiff's claims, arguing that (1) the constitutional claims are insufficiently pled, (2) the plaintiff has failed to state a valid municipal liability claim, and (3) Warden Glenn, Warden Presely,

Warden Bealieu, Captain Frazier, Commissioner Ponte, and former Commissioner Schriro were not personally involved in any of the alleged deprivations.

      1.   <u>Inadequate Medical Care</u>

The plaintiff claims the defendants violated his constitutional rights by exhibiting deliberate indifference to his medical need. (Am. Compl. at 13-14). The conditions-of-confinement analysis under the Fourteenth Amendment consists of a two-pronged test. <u>Cuffee v. City of New York</u>, No. 15 Civ. 8916, 2017 WL 1134768, at *4 (S.D.N.Y. March 27, 2017). First, a plaintiff must establish "that the [constitutional] deprivation alleged is 'objectively sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's necessities.'" <u>Id.</u> (alteration in original) (quoting <u>Trammell v. Keane</u>, 338 F.3d 155, 161 (2d Cir. 2003)). In the context of an inadequate medical care claim, this requires a showing of a medical "condition of urgency, one that may produce death, degeneration, or extreme pain." <u>Johnson v. Wright</u>, 412 F.3d 398, 403 (2d Cir. 2005) (quoting <u>Hemmings v. Gorczyk</u>, 134 F.3d 104, 108 (2d Cir. 1998)).

Second, a plaintiff must establish a "'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.'" <u>Cuffee</u>, 2017 WL 1134768, at *4 (quoting <u>Trammell</u>, 338 F.3d at 161). A pre-trial detainee -- unlike a

convicted prisoner, for whom the state of mind requirement is defined subjectively -- can meet this prong by showing that an objectively reasonable person knew or should have known of the risk to inmate health or safety:

> [T]he pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017).

"To succeed on a claim involving an alleged deficient bed, a plaintiff must [establish] that '[he] had a medical condition requiring a non-standard bed to protect against serious damage to his future health' or 'that the medical condition was itself created by an inadequate bed or mattress . . . .'" Patterson, 2017 WL 1194489, at *6 (third alteration in original) (quoting Youmans v. Schriro, No. 12 Civ. 3690, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013)).

### a. Objective Requirement

For a medical condition to satisfy the objective prong, it must be a "'condition of urgency' that may result in 'degeneration' or 'extreme pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)). "[T]here is no 'static test' to determine whether a

deprivation is sufficiently serious [to meet the objective element]." Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012) (quoting Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir. 1995)). The Second Circuit has held that the adequacy of a mattress may, alone or in combination with other factors, constitute a condition that satisfies the objective prong of the conditions-of-confinement test if its inadequacy causes or threatens to cause sufficiently serious harm, most often sleep deprivation. Walker v. Schult, 717 F.3d 119, 126-27 (2d Cir. 2013) (collecting cases).

To the extent that the plaintiff argues in his reply that the Bob Barker mattress is uncomfortable and is not to be used with a foundation (Objection to Defendants['] Motion to Dismiss Amended Complaint ("Pl. Reply") at 2),[4] these claims would fail to establish the objective prong. Simply alleging that a mattress is uncomfortable is insufficient to "show that the conditions . . . pose an unreasonable risk of serious damage to his health." Walker, 717 F.3d at 125. In general, "the Constitution does not require 'comfortable' prison conditions." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981)). And the referenced "warning" label on the Bob Barker mattress relates not to

---

⁴ Like the Amended Complaint, the pages of the plaintiff's Reply are unnumbered. Accordingly, I use the page numbers assigned by the Court's Electronic Case Filing System.

chiropractic health, but to fire safety.  See, e.g., Howard v. City of New York, Nos. 12 Civ. 4069 et al., 2012 WL 7050623, at *6 (S.D.N.Y. Dec. 20, 2012) ("[T]he warning relates to fire safety . . . . [T]here is no reason to believe that the instructions relate to chiropractic health.") (citation ommitted).

However, as alleged in the Amended Complaint, Mr. White received a recommendation from Dr. Bhatti to be given a firm mattress for a medical purpose. (Am. Compl. at 25). It is unclear what, if any, diagnosis Mr. White received at that time. Later, while at BKDC, he was diagnosed with sciatica allegedly due to the mattresses and sleeping conditions. (Am. Compl. at 10). The plaintiff further alleges that he was scheduled for physical therapy before his transfer to a New York State facility. (Am. Compl. at 10). He was also prescribed medication, which he ultimately refused to take due to the possibility of negative side effects. (Am. Compl. at 10). Mr. White notes that his sleep was so disrupted that it caused anxiety and depression, leading to a prescription for medication for these ailments. (Am. Compl. at 7-8).

The Amended Complaint has few details regarding his diagnoses or how the mattresses contributed to the development of these illnesses. However, the plaintiff is proceeding pro se, and questions regarding the progression of his illness are highly fact

10

specific. Treatment with physical therapy and prescription medication "is indicative of the seriousness of the condition." Harris v. Moore, No. 15 Civ. 1608, 2015 WL 10427865, at *3 (S.D.N.Y. Dec. 3, 2015). The allegations in the Amended Complaint are therefore sufficient to satisfy the objective prong. See Abreu v. Schriro, No. 14 Civ. 6418, 2016 WL 3647958, at *3 (S.D.N.Y. July 1, 2016) (prisoner with sciatica treated with x-rays, pain medication, and physical therapy satisfied objective prong for purposes of motion to dismiss).

b.    Subjective Requirement

A plaintiff satisfies the subjective element of his burden by showing that a prison official has acted with a culpable state of mind. "[A] defendant possesses the requisite mens rea when he acts or fails to act under circumstances in which he knew, or should have known, that a substantial risk of serious harm to the pretrial detainee would result." Feliciano v. Anderson, No. 15 Civ. 4106, 2017 WL 1189747, at *13 (S.D.N.Y. March 30, 2017).

The Amended Complaint alleges that various officers at OBCC, RNDC, and BKDC confiscated his second mattress. (Am. Compl. at 6-10). The plaintiff argues that this was deliberate indifference to his medical need given Dr. Bhatti's recommendation. (Am. Compl. at 6-10). However, Mr. White does not clearly allege that he even showed his referral to a number of these defendants, namely Captain

Thomas, Captain Richardson, and Security Officer Timberlake. (Am. Compl. at 9-10). The Amended Complaint only states that "[a]ll were made aware of my condition and situation, but yet it was not in their duty to be concerned." (Am. Compl. at 10). Even under the liberal pleading standards applied to a pro se complaint, these meager allegations are insufficient to demonstrate that these defendants knew or should have known the severity of Mr. White's medical condition. See Patterson, 2017 WL 1194489, at *7 (allegations that defendants were "aware of and responsible for the deprivations" without further factual support insufficient to satisfy subjective prong) (internal quotation marks ommitted). Therefore, the claims against defendants Thomas, Richardson, and Timberlake should be dismissed.

Conversely, Mr. White alleges that he showed the referral form to Captain Pine, Captain Jean, and Security Officer Taylor, and they all confiscated his second mattress. (Am. Compl. at 6-10). Mr. White also showed the note to Warden Staues and requested a more firm mattress, or, in the alternative, a double mattress. (Am. Compl. at 6). Still, these facts also do not allege the mental state required to survive a motion to dismiss. The referral form does not prescribe a double mattress. (Am. Compl. at 25). And, while it may be the plaintiff's belief that a double mattress was a suitable substitute for the prescription for a firm mattress,

that is not supported by Dr. Bhatti's note or any other allegations of fact. The plaintiff admits as much, stating that he "did not inform the defendants that a second mattress was medically necessary because [he] did not have any proof of that." (Pl. Reply at 13).

The Amended Complaint is also unclear regarding what Dr. Bhatti told the plaintiff about his medical condition, and what, if any, of that information was communicated to the defendants. Cf. Harris v. Moore, No. 15 Civ. 1608, 2015 WL 10427865, at *4 (S.D.N.Y. Dec. 3, 2015) (subjective element satisfied when plaintiff showed doctor's note that described plaintiff's specific medical diagnosis and need for additional mattress to defendants). Mr. White was eventually diagnosed with sciatica at BKDC, but it does not appear he received that diagnosis while at OBCC. The Amended Complaint does not allege that the plaintiff was denied proper care after this diagnosis. But prior to this diagnosis, the defendants were only shown a brief referral form that did not provide any explanation or context relaying the importance of this request. (Am. Compl. At 25). The plaintiff argues that it is "common knowledge" that failure to adequately treat a medical problem will cause serious damage. (Pl. Reply at 6). But there was no indication on this note that this request was in connection with a diagnosed medical issue rather than simple discomfort.

Furthermore, many illnesses or injuries are sufficiently minor that overlooking an aspect of treatment will not necessarily lead to "serious harm." Feliciano, 2017 WL 1189747, at *13. Absent any further diagnosis, explanation, or context in Dr. Bhatti's referral that might demonstrate its urgency, there is no reason to believe that a reasonable person should have known of the importance of this request.

The Amended Complaint fails to satisfy the subjective prong, and therefore fails to state a Section 1983 claim for failure to provide medical care.

### 2. Personal Involvement

Even if the plaintiff successfully pled a constitutional violation, to state a claim against the individual defendants, a "plaintiff must allege sufficient facts to demonstrate that [the] defendants were personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.'" Harris v. Westchester County Department of Corrections, No. 06 Civ. 2011, 2008 WL 953616, at *9 (S.D.N.Y. April 3, 2008) (second alteration in original) (quoting Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001)). Personal involvement in a Section 1983 violation may be shown by evidence that: (1) the official participated directly in the violation; (2) the official, after

learning of the violation, failed to remedy the wrong; (3) the official created a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in supervising subordinates who caused the unlawful condition or event; or (5) the official exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Washington v. Kelly, No. 03 Civ. 4638, 2004 WL 830084, at *3 (S.D.N.Y. April 13, 2004).

Mr. White does not allege any facts that would demonstrate the personal involvement of several of the individual defendants. The Amended Complaint alleges that Commissioner Ponte, former Commissioner Schriro, and Corizon Health Services Manager Jane/John Doe failed to make any changes to the mattresses despite being named in repeated complaints regarding these mattresses. (Am. Compl. at 3-4, 12-13). Defendants Frazier, Beaulieu, and Presely are not mentioned in the Amended Complaint apart from being named in the caption. The plaintiff presents no "further factual enhancement" that demonstrates the involvement of any of plaintiffs that would push these allegations past "the line between possibility and plausibility." Twombly, 550 U.S. at 546; see also Patterson, 2017 WL 1194489, at *7 (similar "meager allegations are insufficient to show how any specific defendant would have known

about the alleged conditions."); <u>Boyd v. City of New York</u>, Nos. 12
Civ. 3385 <u>et al.</u>, 2012 WL 5914007, at *3 (S.D.N.Y. Sept 18, 2012)
(similar pleading "fail[ed] to support a plausible inference that
the individual defendants were personally involved in the alleged
violation."), <u>report and recommendation adopted in relevant part</u>,
2013 WL 452313 (S.D.N.Y. Feb. 6, 2013).

Read liberally, as a <u>pro</u> <u>se</u> plaintiff's complaint must be, Mr.
White could be attempting to implicate these officials under a
<u>respondeat</u> <u>superior</u> or chain or command rationale, but neither
theory may serve as the basis for a Section 1983 claim.  <u>Hernandez
v. Keane</u>, 341 F.3d 137, 144-45 (2d Cir. 2003).  Accordingly, I
recommend that the motion to dismiss with respect to these
defendants be granted on this basis as well.

### 3.  Municipal Liability

The City is a defendant in this case.  To state a claim of
municipal liability, "a plaintiff must make factual allegations
that support the plausible inference that the constitutional
violation took place pursuant to [a municipal policy or custom.]"
<u>Missel v. County of Monroe</u>, 351 F. App'x 543, 545 (2d Cir. 2009);
<u>see</u> <u>Monell v. Department of Social Services the City of New
York</u>, 436 U.S. 658, 690-91 (1978).  An "official policy" may be
implemented through a "policy statement, ordinance, regulation, or
decision" that is officially promulgated by a municipality's policy

makers.  <u>Anthony v. City of New York</u>, 339 F.3d 129, 139 (2d Cir.
2003) (quoting <u>Monell</u>, 436 U.S. at 690).  A "custom," for the
purposes of municipal liability, must be so entrenched and well-
established as to constitute a practice with the force of law.
<u>Patterson v. County of Oneida</u>, 375 F.3d 206, 226 (2d Cir. 2004).
"And although a municipality may [be] held liable even where there
is no liability as to an individual defendant, no claim will lie
where there is no underlying constitutional violation."  <u>Ford v.
City of New York</u>, No. 15 Civ. 7598, 2016 WL 4990258, at *5
(S.D.N.Y. Aug. 26, 2016).

Even if the allegations in the Amended Complaint were
sufficient to establish that the denial of Mr. White's request for
a double mattress occurred pursuant to a municipal policy, the fact
remains that Mr. White has failed to allege any constitutional
violation.  Accordingly, I recommend that the claim against the
City be dismissed.

C. <u>Bob Barker</u>

The plaintiff alleges that the Bob Barker Company is liable
under Section 1983 for supplying the mattresses to the City.
Section 1983 "is not itself a source of substantive rights, but a
method for vindicating federal rights elsewhere conferred by those
parts of the United States Constitution and federal statutes that
it describes."  <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979).

To plead a claim properly under § 1983, a plaintiff must allege that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Thomas v. City of New York, No. 11 Civ. 0578, 2012 WL 4889257, at *2 (S.D.N.Y. Oct. 16, 2012) (quoting Snider v. Dylaq, 188 F.3d 51, 53 (2d Cir. 1999)). Despite providing supplies to the prison, "Barker could not plausibly be described as one of the officials acting under color of law 'who caused the harm' or did so with the requisite state of mind -- namely, deliberate indifference." Walker v. Schriro, No. 11 Civ. 9299, 2013 WL 1234930, at *16 (S.D.N.Y. March 26, 2013); see also Rodriguez v. City of New York; No. 14 Civ. 5172; 2014 WL 4629034, at *2 (S.D.N.Y. Sept. 12, 2014). Therefore, I recommend that this claim be dismissed.

In addition to the Section 1983 claim, according to his answer to the motion, the plaintiff is pursuing a theory of product liability against the Bob Barker Company. (Objection to Defendant's -- Bob Barker Company -- Motion to Dismiss Amended Complaint at 1-2). The Amended Complaint could be read to assert a design defect claim. "[A] defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer." Robinson v.

18

Reed-Prentice Division of Package Machinery Co., 49 N.Y.2d 471,
479, 426 N.Y.S.2d 717, 720 (1980). The plaintiff argues that
"[t]hese mattresses are made thin (by design) and drastically loses
its support with wear and tare [sic]" (Am. Compl. at 4). But
besides these assertions, the plaintiff does not provide any
factual support for this claim. Even read liberally, the Amended
Complaint does not demonstrate how the product was in a condition
not reasonably contemplated by the ultimate consumer. Simply put,
a thin mattress may be uncomfortable, but that does not mean it was
defective. Accordingly, Mr. White's pleading falls short of
plausibly alleging a design defect claim. Even if he crossed the
Iqbal line, this is a state law products liability claim in a case
where all federal claims are being dismissed, which would entitle
the Court to decline to exercise supplemental jurisdiction at this
stage of the litigation. See Walker, 2013 WL 1234930, at *16.
Accordingly, I recommend that all of the claims against the Bob
Barker Company be dismissed.

    D.   Leave to Amend

A pro se litigant should be afforded at least one opportunity
to "amend his complaint prior to its dismissal for failure to state
a claim, unless the court can rule out any possibility, however
unlikely it might be, that an amended complaint would succeed in
stating a claim." Gomez v. USAA Federal Savings Bank, 171 F.3d

794, 796 (2d Cir. 1999) (per curiam). Mr. White has had that opportunity. The Honorable Colleen McMahon, U.S.D.J., has already permitted Mr. White to file an amended complaint and outlined the standards that it was required to meet. (Order dated Oct. 4, 2016, Docket No. 5). The Amended Complaint fails to satisfy those standards, and there is no reason to believe that affording the plaintiff another chance would yield a different result. Leave to amend should be denied.

Conclusion

For the reasons discussed above, I recommend that each of the defendants' motions be granted. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Paul A. Engelmayer, Room 2201, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          July 31, 2017

Copies mailed this date to:

Erik White
8216-A-4362
Upstate Correctional Facility
P.O. Box 2000
309 Bare Hill Rd.
Malone, NY 12593

Neil Giovanatti, Esq.
New York City Law Department
100 Church St.
New York, NY 10007